UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MONA K. FLOYD<br><br>        Plaintiff<br><br>v.<br><br>OFFICE OF REPRESENTATIVE<br>SHEILA JACKSON LEE<br><br>        Defendant | Case No. 1:11-cv-01228 (RC) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT AND TO
REVOKE PLAINTIFF'S *IN FORMA PAUPERIS* STATUS**

Defendant, the Office of Representative Sheila Jackson Lee ("Defendant" or "Office"), by and through undersigned counsel, hereby files this Memorandum of Points and Authorities in Support of its Motion to Dismiss the Amended Complaint and to Revoke Plaintiff's *In Forma Pauperis* Status. Defendant seeks dismissal of this case with prejudice under 28 U.S.C. § 1915(e)(2)(A).

I.  **Introduction and Summary of Argument**

This is a disability discrimination case brought under the Congressional Accountability Act ("CAA" or "the Act"), 2 U.S.C. §§ 1301-1438, by Mona Floyd ("Plaintiff"), a lawyer and former Legislative Director/Chief Counsel for the Office of Rep. Sheila Jackson Lee. Plaintiff submitted an Application to Proceed In District Court Without Prepaying Fees or Costs on June 27, 2011. That application form includes an affidavit in support of Plaintiff's request for *in forma pauperis* status. Pl.'s Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 2 (hereinafter cited as "IFP

App."). Leave to file without prepayment of cost was granted by the Court. Fiat Order, June 29, 2011. Plaintiff's application was then docketed on June 30, 2011. *Id.*

Following a lengthy briefing schedule, discovery in this case began in earnest after the parties attempted unsuccessfully to mediate their dispute with the assistance of a United States magistrate judge on February 25, 2014. Discovery has revealed that Plaintiff gave false and misleading statements in the affidavit supporting her *in forma pauperis* application, warranting dismissal with prejudice.

## II. Factual Background

### A. The Representations Made by Plaintiff Under Penalty of Perjury in the Affidavit Supporting Her *In Forma Pauperis* Application

In the affidavit in support of her *in forma pauperis* application signed under penalty of perjury on June 23, 2011, Plaintiff represents in response to question 2 that she has been unemployed since September 17, 2010. IFP App., ECF No. 2 at ¶ 2. In answer to question 3, *Other Income*, Plaintiff checked the boxes indicating that "in the past twelve months," she received income from (a) her profession and (f) any other sources. *Id.* at ¶ 3(a), (f). Plaintiff did not check any of the other boxes noting income from (b) rent payments, interest, or dividends, (c) pension, annuity, or life insurance payments, (d) disability, or worker's compensation payments, or (e) gifts, or inheritances. *Id.* at ¶ 3 (b), (c), (d), and (e). In specifying her sources of money that she received and what she expected to receive in the future Plaintiff noted:

1. TIAA CREF Retirement Cash Withdrawal
   a. June 8, 2011 - $2,219.09
   b. March 7, 2011 - $3,002.00
2. Federal Thrift Savings Plan – $4,160 cash withdrawal

2

   3. Employment as Congressional Staffer $54,500 2/23/10 – 9/17/10

   4. Assisting my sister with errands – (March April May June 2011) – $2,800

*Id.* at ¶ 3. Plaintiff also states, "*It is uncertain as to what, if any money, I will receive in the future.*" *Id.* (emphasis added).

With respect to question 4 ("Amount of money that I have in cash or in a checking or savings account"), Plaintiff represented that she had about $1,000 in a checking or savings account. *Id.* at ¶ 4. Plaintiff also states that "[b]/c I have been unemployed nine months, I have depleted most of my savings." *Id.*

With respect to question 5 ("Any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value that I own, including any item of value held in someone else's name (*describe the property and its approximate value*)"), Plaintiff listed only a "2006 Nissan Sentra – financed by bank loan not owner outright (financed loan)." *Id.* at ¶ 5. Plaintiff does not list an approximate value for the car or any other assets (e.g., retirement assets).

Plaintiff signed the Declaration at the bottom of page two of the affidavit stating that "**I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims.**" *Id.* at 2.

  **B.** **Key Documents Obtained During Discovery**

In advance of Plaintiff's deposition,[1] Defendant obtained Plaintiff's W-2 Wage and Tax Statement for the year 2010, which shows that Plaintiff earned $59, 726 in wages from the U.S. House

---

[1] Plaintiff was deposed on May 29, 2014, at the Office of House Employment Counsel, U. S. House of Representatives. Relevant excerpts of Plaintiff's deposition transcript (pages 1-37, 75, 228, 256-57, and 266 (hereinafter referred to as Floyd Dep. Tr.)), and relevant transcript exhibits (Floyd Dep.

3

of Representatives in 2010. Floyd Dep. Tr. Ex. 2. This amount is $5,226.44 *more than* what Plaintiff reported as her wages in her affidavit in support of her application for *in forma pauperis* status. *Compare* Floyd Dep. Tr. Ex. 2 *with* IFP App., ECF No. 2.

Plaintiff also produced her 2011 U.S. Individual Income Tax Return for the year Jan. 1 – Dec. 31, 2011 during discovery. Floyd Dep. Tr. Ex. 3. Plaintiff's 2011 Tax Return, including the attached 1099-R Detail Report, shows that Plaintiff had a gross income of $13,476.00 in 2011 because she withdrew $13,476.00 in pension and annuities.[2] Floyd Dep. Tr. Ex. 2. Specifically, Plaintiff withdrew $7,117 from Teachers Insurance A (a.k.a. TIAA CREF) and $6,359 from Thrift Savings Plan (a.k.a. Federal Thrift Savings Plan). The total amount of these withdrawals is $4,094.91 *more than* what Plaintiff reported in her affidavit in support of her application for *in forma pauperis* status as having either withdrawn as income (in response to question 3) or held as an asset (in response to question 5). *Compare* Floyd Dep. Tr. Ex. 3 *with* IFP App., ECF No. 2.

The documented income and assets that Plaintiff failed to disclose to the Court in her *in forma pauperis* affidavit total $9,321.35.

### III. Legal Standard

The *in forma pauperis* statute states that:

> Notwithstanding any filing fee or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue.

28 U.S.C. § 1915(e)(2)(A).

---

Tr. Exs. 1-4) are appended hereto as Attachment 1.

[2] Plaintiff admitted at her deposition that she withdrew all monies from her retirement accounts in 2011 and her gross income of $13,476.00 reflects the total amount she had in her retirement accounts in 2011 before making withdrawals. Floyd Dep. Tr. at 30.

"Because the statute uses the command 'shall,' dismissal is mandatory in the face of untrue allegations of poverty." *Oquendo v. Geren*, 594 F. Supp. 2d 9, 11 (D.D.C. 2009) (citing *Johnson v. Spellings*, 579 F. Supp. 2d 188, 191 (D.D.C. 2008) (stating that the complaint "must" be dismissed where the court has determined that the allegation of poverty is untrue); *Thomas v. Gen'l Motors Acceptance Corp.*, 149 F. Supp. 2d 495, 497 (N.D. Ill. 2001) (noting that the statute "mandates" dismissal); *Portis v. Geren*, No. 1:06-cv-1510, 2007 WL 2461799, *2 (M.D. Pa. Aug. 23, 2007) (referring to "the mandatory language" of the statute)). Dismissal must occur "at any time" the Court learns that the allegation of poverty is untrue. 28 U.S.C. § 1915(e)(2)(A); *see, e.g., Johnson*, 579 F. Supp. 2d at 188, 191 (dismissing case two and a half years after the complaint had been filed).

Moreover, "[w]here the applicant has intentionally misled the court, the dismissal may be with prejudice." *Oquendo*, 594 F. Supp. 2d at 11 (dismissing with prejudice and citing *Mathis v. New York Life Ins.*, 133 F.3d 546 (7th Cir. 1998) (*per curiam*) (affirming dismissal with prejudice where court concluded that the plaintiff knowingly provided inaccurate information on his application to proceed *in forma pauperis*); *Thomas v. Gen'l Motors Acceptance Corp.*, 288 F.3d 305 (7th Cir. 2002) (same); *Attwood v. Singletary*, 105 F.3d 610, 612-13 (11th Cir. 1997) (*per curiam*) (same); *Romesburg v. Trickey*, 908 F.2d 258, 260 (8th Cir. 1990) (same); *Thompson v. Carlson*, 705 F.2d 868 (6th Cir. 1983) (*per curiam*) (same)). Notably, the failure of a plaintiff to update an application in which material misrepresentations have been made is a material fact in deciding whether perjury has been committed. *Thomas*, 288 F.3d at 306.

IV. **Argument**

Plaintiff's Amended Complaint should be dismissed with prejudice because her testimony shows that she knowingly gave false and misleading statements in her affidavit in support of her

5

application for *in forma pauperis* status and did not later amend or correct the affidavit. Plaintiff's critical admissions regarding the documents she referred to when completing the affidavit (or had available to her at the time), coupled with her standing as a lawyer make any protestations that she did not give false and misleading statements in her affidavit patently incredible. Furthermore, Plaintiff's allegation of poverty is untrue. In evaluating Plaintiff's credibility on the issue of whether she knowingly gave false and misleading statements to the Court upon which the Court materially relied, the Court should consider Plaintiff's relevant admission that she also underreported her 2011 income to the Internal Revenue Service (IRS), discussed later in this brief in section IV(C).

> A. **Plaintiff is a Licensed Attorney Who Knowingly Made False Statements in Her Affidavit Supporting Her Application for *In Forma Pauperis* Status**

A grant of *in forma pauperis* status shifts the costs of filing a lawsuit to the federal government. Therefore, "the application to proceed *in forma pauperis* requires that an applicant answer a series of questions and declare, under penalty of perjury, that the answers to those questions are true and correct." *Johnson*, 579 F. Supp. 2d at 191. This district has held that an applicant's educational background, work experience, and training matter significantly in determining the credibility of an applicant's explanations regarding material misrepresentations made in an *in forma pauperis* affidavit. *Id.* at 190.

The plaintiff in *Johnson* was an accountant who failed to list all of her assets in response to affidavit question 5 and gave "vague and evasive answers" to questions asked by the Court concerning her failure to list all of her assets during an evidentiary hearing on the issue.[3] 579 F.

---

[3] The *Johnson* court held an evidentiary hearing on the issue, but a hearing is not required. *See, e.g., Oquendo*, 594 F. Supp. 2d at 10-11 (deciding motion to dismiss based upon supporting

Supp. 2d at 190. The Court found Johnson's testimony that she did not understand or know that she had certain assets to be "patently incredible" because she had a college degree in accounting and had trained and worked as an accountant. *Id.*

In this case, Plaintiff is a lawyer with a degree from Southwestern School of Law in California. Floyd Dep. Tr. at 228. In addition, she is admitted to practice in the State of Maryland and has a current active standing. *See* Maryland Courts, http://www.mdcourts.gov/cgi-bin/cstf.pl?inputname=Floyd&firstname=Mona&submit=Submit (last visited June 27, 2014). Plaintiff admits that aside from the time spent representing herself in this case, she has done other litigation work. For example, while serving as a law extern, she handled discovery issues, sat in on depositions taken under penalty of perjury, and attended hearings with counsel. Floyd Dep. Tr. at 266. Moreover, Plaintiff worked for Defendant as Senior Legislative Assistant/Health Policy Director and later as Legislative Director/Chief Counsel and, in those capacities, staffed the Congresswoman during Congressional hearings at which Plaintiff would have observed testimony given under penalty of perjury. *See, e.g., id.* at 75. In the context of her legal background and training, Plaintiff admits to understanding the meaning and seriousness of the phrase "under penalty of perjury." *Id.* at 14.

Nevertheless, Plaintiff would have this Court believe that she made "an honest mistake" in filling out her affidavit in support of *in forma pauperis* status. *Id.* at 257. However, the number, type, and materiality of false statements in Plaintiff's affidavit show otherwise. Plaintiff filled in

---

declarations); *Thomas*, 149 F. Supp. 2d at 497-98 (deciding motion to dismiss based upon supporting affidavit); *Mathis*, 133 F.3d at 547 (district court decided motion to dismiss based upon affidavits); *Romesburg*, 908 F.2d at 259 (district court decided motion to dismiss based upon supporting documents).

the information regarding her financial status admittedly without any help or assistance from others and signed the document under penalty of perjury. *Id.* at 12, 13. When asked whether she reviewed any documents while answering questions on the affidavit to verify the financial information she was representing to the Court, Plaintiff gave vague and evasive answers during her deposition. The following excerpts from Plaintiff's deposition demonstrate this point:

```
14        Q    Given the seriousness of that declaration,
15   did you take the time to read it and to make sure the
16   representations you made to the Court in the document
17   were completely truthful?
18        A    I put information that I believe was
19   truthful on here.
```

*Id.* at 14.

```
24        Q    In filling out this document, did you
25   review any documentation in order to verify the dates
 2   that you put in the document and the numbers that you
 3   state as your income in this document to the Court?
 4        A    I'm not sure if I did or not.
 5        Q    Why wouldn't you?
 6        A    Why wouldn't I?  I mean, as I said, I'm not
 7   sure.
 8        Q    Okay.  So you either reviewed documents or
 9   you guessed?
10             MR. WILKENFELD:  Objection.
11   BY MS. WILLIAMS:
12        Q    Answer the question.
13        A    What I know is I would have referred to
14   whatever information I needed to, to put here to answer
15   the questions truthfully.
16        Q    Okay.  So you reviewed documents?
17        A    As it appears, I would have needed to refer
18   to documents.
19        Q    Yes, because you have dollar amounts down
20   to the penny, for example, under the TIAA-CREF
21   retirement cash withdrawal, correct?
22        A    Correct.
```

*Id.* at 14-15.

```
22        Q    So the question I have is:  What documents
23   would you have referred to in order to state the dates
24   and the specific dollar amounts in this form?
25        A    I would have referred to my Federal thrift
 2   savings statement, my TIAA-CREF statements.  I would
```

```
 3    have referred to -- I may have referred to, in terms of
 4    the bills, statements, my bills in the mail.  Some of
 5    these I may have already known how much my monthly
 6    bills were, so I may have, you know, written down what
 7    I normally would pay.
 8         Q    Do you have a specific recollection of
 9    having documents in front of you when you filled out
10    this form?
11         A    In front of me?  I don't really recall if I
12    had documents in front of me.
```

*Id.* at 16-17.

In her deposition, Plaintiff admits to having referred to her Federal Thrift Savings Plan (TSP) statement and TIAA-CREF statements in filling out the affidavit, acknowledging the dollar amounts she provided in the affidavit are exact. *Id.* at 15-17. Obviously then, having reviewed the TSP and TIAA-CREF statements in order to complete her affidavit, Plaintiff would have known that she failed to disclose $4,094.91 in additional retirement assets. *Cf. Thomas*, 149 F. Supp. 2d at 497-99 (finding that Thomas should have reported a pending request for lump sum distribution of retirement funds either in response to question 3 or question 5 of his IFP application). Moreover, Plaintiff admits she did not amend her *in forma pauperis* application when she subsequently withdrew these remaining assets as income. *Id.* at 33; IFP App., ECF No. 2; *see also* Floyd Dep. Tr. Ex. 3. By way of explanation, Plaintiff says "I would have seen no reason to, believing that I've already submitted what I believe I had withdrawn from my accounts." Floyd Dep. Tr. at 33. Plaintiff's explanation does not at all address her obligation to amend the application for *in forma pauperis* status. *See Thomas*, 288 F.3d at 306. Moreover, Plaintiff's explanation completely ignores her initial failure to disclose $4,094.91 in retirement account assets to the Court in response to question 5, a false and misleading omission compounded by Plaintiff's false and misleading statement in response to question 3 that *"It is uncertain as to what, if any money, I will receive in the future."* IFP App., ECF No. 2 at ¶ 3; *see also Thomas*, 149 F. Supp. 2d at 499 ("The court finds

that Thomas's statement that he did not anticipate he would receive any more money is a material misrepresentation of his financial status and an attempt to conceal the existence of these funds from the court").

Plaintiff also twice misrepresents in the affidavit that she has been unemployed "since September 17, 2011." IFP App., ECF No. 2 at ¶¶ 2, 3. And, she misrepresents the amount of income that she received in 2010 from her employment as a Congressional staffer, stating that she made $54,500. *Id.* at ¶ 3. At deposition, Plaintiff was shown a payroll and benefits statement documenting that she was employed through the end of September 2010 and received a full month's wages for the month of September. Floyd Dep. Tr. at 17-18. Plaintiff explained why she did not accurately represent her full period of employment in the affidavit as follows:

```
10      A     The way that I look at it is, I put in my
11   resignation September 17th was the last day, and I no
12   longer went back to the office after that.  Whether or
13   not they continued to pay is another thing.  My last
14   day in the office was the 17th via notice and
15   physically, and I no longer worked after that.
```

*Id.* at 18.[4]

Plaintiff's explanation for why she did not list her full period of employment strains credibility. Moreover, it does not begin to address why Plaintiff misrepresented her 2010 wage income. Gross and net year-to-date wage income is listed on Plaintiff's September 2010 pay stub and Medicare wages are listed on her 2010 W-2. Contrary to her testimony at deposition, Plaintiff's 2010 W-2 would have been sent to her address of record well before June 23, 2011 when she signed the affidavit in support of *in forma pauperis* status. Floyd Dep. Tr. at 256; *see also id.* at 19, 20 (admitting her W-2 Wage and Tax Statement was correctly mailed to the post office address she

---

[4] Using Plaintiff's logic, if an employee uses paid vacation for the remaining tenure of their time with an employer that paid vacation time is a period of "unemployment."

10

had at the time). Nevertheless, although her Medicare wages reported on the 2010 W-2 totaled $59,726.44, *id.* at 20, Plaintiff represented that she received total wage income of $54,500 for employment as a Congressional staffer on her affidavit of financial status. When questioned about this discrepancy, Plaintiff testified as follows:

```
 2      Q     How is the period in which you worked
 3   different from what your W-2 shows?
 4      A     I'm not sure.  But as far as in my mind, my
 5   work period for me was the 17th.
 6      Q     Well, that's -- where did you get the
 7   54,500 number from?
 8      A     I may have referred to -- I may have
 9   referred to maybe a pay stub or something.  I know it
10   wasn't the W-2 that I referred to.
11      Q     Doesn't your pay stub from the House show
12   your entire earnings per year from that time frame?  So
13   you're saying you used your pay stub to get your
14   earnings.  I'm unclear.  Because your earnings -- your
15   pay stub wouldn't show your entire earnings for the
16   year.
17      A     I said I may have.  I'm not sure exactly
18   what I referred to here.  From this specific number, it
19   looks like I would have referred to something, but I'm
20   not sure what I referred to.
21      Q     In any event, you agree the information is
22   not true, correct?
23            MR. WILKENFELD:  Objection.
24      A     I can't -- I can't agree to that, because
25   this could be what I'm referring to in terms of what I
```

*Id.* at 22.

```
 2   believe my work period was, and I may have calculated
 3   it based on my working through the 17th.
 4   BY MS. WILLIAMS:
 5      Q     Now, that's several thousand dollars less
 6   than the amount you earned as a Congressional staffer;
 7   isn't that correct, based on your W-2?
 8      A     I would need to -- let's see.  According to
 9   this document, then it would be off about -- yeah, some
10   thousands of dollars, if this is correct.
```

*Id.* at 23.

Indeed, Plaintiff underreported her 2010 wage income by $5,226.44. Plaintiff's vague and evasive answers as to what wage documents she may have referred to in completing the affidavit of

financial status, or how she may have otherwise calculated the 2010 wage amount reported in her affidavit, strain credulity. To borrow a phrase from the *Johnson* opinion, "[w]hile it is understandable that people may not be absolutely accurate in the amounts they list on the affidavit in support of the application for *in forma pauperis* status, it is hard to believe that a [lawyer] can underestimate her [income and] assets by more than [$9,000]." 579 F. Supp. 2d at 190.

Plaintiff's standing as a lawyer makes her material misrepresentations in the affidavit inexcusable. It is clear through Plaintiff's admissions about reviewing retirement account statements, and her vague and evasive testimony about what wage documents she might have referred to or how she otherwise calculated her 2010 wages, that she knowingly gave false and misleading statements to the Court. That Plaintiff would mislead the Court by omitting asset information given her legal education and training, and her Congressional work experience through which she obtained first-hand knowledge of the seriousness of making false statements under penalty of perjury, warrants dismissal of her case.

B. **Plaintiff's Allegation of Poverty is Untrue**

In *Johnson*, the Court found that plaintiff's declaration was "not accurate" and that she failed to disclose "substantial" assets valued at a whopping $562,000.[5] 579 F. Supp. 2d at 190. While the plaintiff in *Johnson* underestimated "substantial" assets, cases under 28 U.S.C. § 1915(e)(2)(A) do not turn on whether "substantial" assets are unreported but on whether the allegation of poverty is untrue. *See, e.g.*, *Mathis*, 133 F.3d at 547 (dismissing case with prejudice because of a false allegation of poverty where a home with approximately $14,000 of equity was

---

[5] Johnson declared that the only real estate, stocks, bonds, securities, other financial investments, automobiles, or any other thing of value she owned was a 1992 Saturn automobile, which she valued at approximately $300. 579 F. Supp. 2d at 190.

intentionally unreported); *Romesburg*, 908 F.2d at 259 (dismissing case with prejudice because of applicant's conscious and intentional omission of real estate holdings worth $5,000); *Harris*, 664 F.2d at 389 (dismissing case because account with balance of $19,368.94 was unreported).

Poverty is measured by some courts, like *Johnson*, using "the Government's established poverty level." *Johnson*, 579 F. Supp. 2d at 191. In 2011, the U.S. Department of Health and Human Services poverty guidelines were $10,890 for a family of one. U.S. Dep't of Health and Human Services, http://aspe.hhs.gov/poverty/11poverty.shtml (last visited June 27, 2014). That same year, the U.S. Census poverty threshold was $11,702 for a one person family unit where the person was under 65 years of age. U.S. Census Bureau, http://www.census.gov/hhes/www/poverty/data/threshld/index.html (last visited June 27, 2014).

The amount of income Plaintiff received in 2011 as reported to the Court in her *in forma pauperis* affidavit and upon which the Court materially relied is just at the poverty line at $12,181.09.[6] Focusing *just* on Plaintiff's documented 2011 income (*including* the $4,094.91 in retirement account cash withdrawals that Plaintiff failed to disclose to the Court anywhere on her *in forma pauperis* affidavit) and conceding *arguendo* Plaintiff's representation to the Court that "[b]/c I have been unemployed nine months, I have depleted most of my savings," see IFP App., ECF No. 2 at ¶ 4 (these depleted savings would, in theory, include her 2010 wages totaling $59,726.44), Plaintiff's allegation of poverty is untrue. Plaintiff's documented 2011 income *including* the $4,094.91 in retirement account cash withdrawals that Plaintiff failed to disclose to the Court totals $16,276.00, an amount well above the Government's established poverty level for 2011.

---

[6] *See* IFP App., ECF No. 2 at ¶ 3.

Conveniently, Plaintiff failed to disclose to the Court approximately twenty-five percent of her 2011 income.

### C. Plaintiff's Documented History of Underreporting Her Income to the Federal Government Should be Given Considerable Weight in Assessing Whether Plaintiff Has Made Misrepresentations to the Court

Plaintiff's veracity and truthfulness is doubtful in the context of Plaintiff's documented history of underreporting her income in federal documents. Plaintiff admitted during deposition that in completing her 2011 Tax Return, she failed to report taxable wages (totaling $2,800) she received for assisting her sister with errands in March, April, May, and June 2011 (these wages are listed on her *in forma pauperis* affidavit). Floyd Dep. Tr. at 23-28. Plaintiff admits these payments were not gifts, but payments for services rendered. *Id.* at 24. Plaintiff further admits that at the time she filed her 2011 Tax Return, she signed a Taxpayer Declaration and Signature Authorization stating that "[u]nder penalties of perjury, I declare that I have examined a copy of my electronic individual income tax return and accompanying schedules and statements for the tax year ending December 31, 2011, and to the best of my knowledge and belief, it is true, correct, and complete." *Id.* at 26; Floyd Dep. Tr. Ex. 3 ("IRS e-file Signature Authorization" page). Nevertheless, in spite of signing that declaration under penalty of perjury, Plaintiff underreported taxable wage income to the IRS. This is part of an identifiable pattern of false and misleading statements knowingly made by Plaintiff.

### D. Plaintiff's Overall Credibility is in Question

The Court should question Plaintiff's overall credibility as it relates to the fundamental premise of this lawsuit: that Plaintiff has a disability. In discovery, Defendant learned that Plaintiff had her 2011 income tax form prepared for her under a program that allows free tax return preparation for qualifying taxpayers. Floyd Dep. Tr. at 34-35. The program offers free tax help to people who generally make $52,000 or less, persons with disabilities, the elderly, and limited

English speaking taxpayers who need assistance in preparing their own tax returns. Floyd Dep. Tr. Ex. 4. Plaintiff qualified for the program because of her income. Floyd Dep. Tr. at 35. As reflected on the Preparer Use Form page of Plaintiff's 2011 IRS Tax Return, when asked by the tax preparer "Do you or any member of your household have a disability?" Plaintiff answered "No." Floyd Dep. Tr. Ex. 3, Preparer Use Form page. Plaintiff would have this Court believe that Defendant has failed to accommodate her alleged disability while at the same time representing in other critical forums that she does not have a disability. *See* Floyd Dep. Tr. 34-37 and Ex. 3 ("Preparer Use Form" page). This is yet another example of Plaintiff's lack of veracity, which the Court should consider in assessing Plaintiff's credibility on the issue of her application to proceed in district court without prepaying fees or costs.

V.  **Conclusion**

Because Plaintiff's allegation of poverty is untrue and she has intentionally misled the Court, Defendant respectfully requests that Plaintiff's lawsuit be dismissed with prejudice.

Respectfully submitted,

By: s/ Kimberly Carey Williams
Kimberly Carey Williams, VSB # 41325
Gloria J. Lett, D.C. Bar # 293365
U.S. House of Representatives
Office of House Employment Counsel
1036 Longworth House Office Building
Washington, DC 20515
(202) 225-7075

DATED: June 27, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of June 2014, a true and accurate copy of Defendant's Motion to Dismiss the Amended Complaint and to Revoke Plaintiff's *In Forma Pauperis* Status, Memorandum of Points and Authorities in Support, and Proposed Order were served via email upon:

> Ari M. Wilkenfeld, Bar Number 461063
> The Wilkenfeld Law Group
> 1050 Connecticut Ave., NW
> Suite 1000
> Washington, DC 20036
> ari@wilkenfeldlaw.com

> Rosalind H. Herendeen
> The Wilkenfeld Law Group
> 1050 Connecticut Ave., NW
> Suite 1000
> Washington, DC 20036
> rosalind@wilkenfeldlaw.com

By: s/ Kimberly Carey Williams