**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

)
**Mona K. Floyd,**                                      )
                                                       )
      **Plaintiff,**                              )
                                                       )
**v.**                                                 )   **No. 1:11-cv-01228 (RC)**
                                                       )
**Office of Representative Sheila Jackson Lee,**       )
                                                       )
      **Defendant.**                              )
_____)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND TO REVOKE PLAINTIFF'S _IN FORMA PAUPERIS_ STATUS**

Plaintiff, by and through the undersigned counsel, hereby submits the instant Opposition

to Defendant's Motion to Dismiss the Amended Complaint and to Revoke Plaintiff's _In Forma_

_Pauperis_ Status ("Motion to Dismiss").

**I.      Defendant Misrepresents The Record With Regard To The Errors In
Plaintiff's Financial Calculations**

In its Motion to Dismiss, Defendant suggests that Plaintiff's miscalculations with regard

to her withdrawals from her Teachers Insurance A Account ("TIAA CREF") and Thrift Savings

Plan ("TSP"), and the exact figure of the wages earned from Defendant are appropriate grounds

for dismissal.  In support of its position, Defendant takes particular issue with the slight

numerical discrepancies in Plaintiff's application for _in forma pauperis_ ("IFP") status and her

2010 and 2011 tax returns.  However, not only does Defendant misrepresent the figures in its

own Motion, but nothing in its Motion or in the record suggests that Plaintiff "knowingly gave

false and misleading statements in her affidavit."  Motion to Dismiss at 5 (emphasis added).

1

Ultimately, while Defendant attempts to distort the record and suggests that Plaintiff intentionally failed to disclose over $9,000 to the Court, a closer review of Plaintiff's finances reveals that while she did inadvertently miscalculate her income, the $9,000 figure quoted by Defendant is entirely inaccurate and Plaintiff actually overestimated her income from the twelve month period from June 23, 2010 to June 23, 2011 (the time period reviewed by the Court for the purposes of considering Plaintiff's IFP status).  Accordingly, there is no basis to revoke her *in forma pauperis* status and, as she clearly did not intentionally mislead the court as to her financial status, particularly given that she overestimated her earnings, dismissal of the above-captioned matter is not warranted.

### A.  Plaintiff's Salary

Plaintiff's salary as a Congressional staffer with the Congresswoman's office was $90,000 a year.  In 2010, however, she was employed from only February 23, 2010 to September 17, 2010.  Defendant takes great issue with how Plaintiff defines her "employment" with Defendant.  *See* Motion to Dismiss at 10.  Plaintiff's last day physically working in the Congresswoman's office was September 17, 2010, and thus Plaintiff reasonably considered this her last day of employment.  According to Defendant, "that's not factually accurate," and the end of September must be considered Plaintiff's last day of employment for the purposes of the IFP application because Plaintiff continued to receive pay through the end of September.  *See* Motion to Dismiss, Exhibit 1 at 18.  To allege that the debate regarding what constituted Plaintiff's last day of employment is anything more than a difference of interpretation is attenuated, and to argue that Plaintiff consciously defined her last day of employment as September 17, 2010 in an effort to deceive the Court is misleading and offensive.

Ultimately, whether Plaintiff was employed until September 17, 2010 or September 30, 2010 is irrelevant because her wages for the applicable year in question, June 23, 2010 to June 23, 2011, are significantly less than the $54,500 she stated on the IFP application.  Plaintiff's 2010 federal tax form represents that her salary was $57,476.  *See* Exhibit 1, Plaintiff's 2010 1040A Form.  Her 2010 W-2 further provides that her income for 2010 was $57,476.44.  *See* Exhibit 2, Plaintiff's 2010 W-2 Form.  The $59,726.44 figure that Defendant repeats throughout its Motion, while convenient for purposes of increasing any discrepancies in Plaintiff's calculations, does not represent Plaintiff's federal taxable income.  *See*, *e.g.*, Motion to Dismiss at 10, 13.  *See* American University, Payroll - Explanation of W2 Form, http://www.american.edu/finance/payroll/explanation-of-w2-form.cfm (last visited July 10, 2014); Department of the Treasury Internal Revenue Service 2014 General Instructions for Forms W-2 and W-3, http://www.irs.gov/pub/irs-pdf/iw2w3.pdf (last visited July 10, 2014).  Accordingly, any calculation errors regarding Plaintiff's wages from Defendant, based on the salary figure of $57,476, total less than $3,000, not $5,226.44, as Defendant suggests.  *See* Motion to Dismiss at 11.

A partial reason for the difference between the $54,500 stated in Plaintiff's IFP application and the $57,476 stated in her tax form is due to Plaintiff's genuine oversight in not including Defendant's student loan repayments in her "income" on the Court's form.  *See* Exhibit 3, Plaintiff's Paystubs.  Defendant paid $833 a month towards Plaintiff's student loans, but Plaintiff reasonably did not include those amounts as "income" when completing the IFP application.  Notably, those payments of $833 were paid directly to Plaintiff's student loan carrier, Sallie Mae, and were never deposited into Plaintiff's personal bank account.  Accordingly, those funds were never accessible to Plaintiff for her own use.

The IFP form asked for Plaintiff's financial information for the last twelve months from the date on which the form was completed.  As of June 23, 2011, over the prior twelve months, Plaintiff had earned income from Defendant's office for only three months and eight days.  The $54,500 figure which Plaintiff relied on represents Plaintiff's approximate salary had she worked there for over six months.  Therefore, the $54,500 figure that Plaintiff listed is not representative of the actual information being sought by the Court.  In actuality, during the time period requested by the Court, Plaintiff earned just over $24,999 in gross pay.  *See* Exhibit 3.  Her net pay, however, totaled just over $13,552.50.  It is Plaintiff's net pay that should be considered for purposes of her IFP application, as the form asked for all income received over the past twelve months.  *See* Docket Entry 2.  Regardless, both Plaintiff's net pay and gross pay from Defendant from June 23, 2010 to June 23, 2011 are significantly less than what was represented in error on Plaintiff's IFP form.

Notably, Plaintiff does not benefit from over-reporting her income on the Court's IFP application.  Defendant's entire argument in its Motion to Dismiss is that Plaintiff underreported her earnings to the Court for the applicable time period.  Plaintiff's admitted confusion with regard to reporting just her salary from Defendant suggests that her actions were not done with the intent to mislead the Court, but were rather executed with a misunderstanding regarding her finances and what she should report.  Suffice it to say, that Plaintiff overestimated her income from Defendant by at the very least $29,501 when completing IFP application undercuts Defendant's argument that Plaintiff's "allegation of poverty is untrue" and was purposely concocted in order to mislead the Court.  Motion to Dismiss at 13.

### B.  Plaintiff's Withdrawals from her TIAA CREF and TSP Accounts

Defendant further takes issue with an alleged $4,094.91 difference between what Plaintiff accounted on her IFP application with regard to relevant withdrawals and what was detailed in her 2011 tax forms.  *See* Motion to Dismiss at 4.  Notably, however, what matters for the purposes of the instant Motion is not a comparison between Plaintiff's tax records and her IFP application, but rather the accuracy of her IFP application which, as discussed in more detail below, contains accurate information.  Defendant contends that Plaintiff benefited from $7,117 withdrawn from her TIAA CREF account and $6,359 withdrawn from her TSP account, and that Plaintiff thus underestimated her income from these accounts when completing her IFP form.  *Id*. These figures, however, represent the gross payments made to Plaintiff, and not the amount she actually received.  *See* Exhibit 4, July 2, 2014 Letter to Plaintiff from TIAA CREF re Transaction Summary.  Again, question 3 on the IFP form specifically asked for all income received in the past twelve months.  *See* Docket Entry 2.  Further, the figures Defendant cites include sums withdrawn after Plaintiff's submission of the IFP form.  *See* Exhibit 4.

Appropriately, Plaintiff reported the income received from her TIA CREF and TSP accounts, and thus the information Plaintiff reported on the IFP application is entirely accurate with regard to the cash withdrawals made from her TIAA CREF account and TSP account as of June 23, 2011.  Specifically, Plaintiff withdrew and received $3,002.00 on March 7, 2011, $4,160 on March 28, and $2,212.09 on June 8, 2011, all of which are accurately reflected on Plaintiff's application.  *See* Exhibit 4; Docket Entry 2.

The admitted error that Plaintiff made in completing her IFP application, which results in a slight underreporting of income ($1,232.92) is that she did not include the remaining balances of her TIAA CREF and TSP accounts as assets in response to question 5.  *See* Docket Entry 2.

While Plaintiff now recognizes this oversight, it does not amount to the extent of underreporting of finances as Defendant represents in its Motion to Dismiss.

Overall these errors are not, as Defendant wishes to have the Court believe, indicative of an attempt by Plaintiff to understate her net worth.  In fact, quite the opposite has occurred.  Nor is this an instance where Plaintiff engaged in "bad faith litigiousness or manipulative tactics," that warrant dismissal of her case.  *Attwood v. Singletary*, 105 F.3d 610, 612 (11th Cir. 1997).

**II.    The Facts Here Do Not Support Dismissal, As The Errors Contained In Plaintiff's *In Forma Pauperis* Application Were Not Intentional And Were Not Made Knowingly**

Defendant recognizes that "it is understandable that people may not be absolutely accurate in the amounts they list on the affidavit in support of the application for *in forma pauperis* status," yet finds it incredulous that Plaintiff made "an honest mistake."  Motion to Dismiss at 12 (citing *Johnson v. Spellings*, 579 F. Supp. 2d 188, 190 (D.D.C. 2008)), 7.

This is simply not the kind of situation where dismissal is appropriate.  The facts here are not akin to those in *Johnson*, where plaintiff and her husband were accountants and failed to disclose large sums of money.  *Johnson*, 759 F. Supp. 2d at 189.  Specifically, in *Johnson*, dismissal of the case was appropriate as the plaintiff misrepresented the fact that she and her husband owned a joint non-retirement account valued at approximately $170,000 and a retirement account valued at approximately $27,000.  *Id.* at 190.  She further owned property valued at $366,060.  *Id*.  The court, in dismissing the case, found it "hard to believe that an accountant, represented by counsel, whose husband is a GS-15 accountant, can underestimate her assets by more than $562,000."  *Id*.  The figure at issue here, approximately $4,210.00, pales in comparison.  While it is understandable that an omission of $562,000 may not constitute an

"honest mistake," it is perfectly conceivable that an oversight of approximately $4,208.92 was not "deliberate, intentional, and conscious." *Id.* at 191.

### III.    Plaintiff's Overall Credibility Should Be Adjudicated At Trial

Defendant posits that Plaintiff's credibility as to whether she suffers from a physical disability should be questioned because she made inadvertent and reasonable calculation mistakes that amounted to less than a $5,000 error.  Defendant somehow believes that this error is germane to the very question of whether Plaintiff requested an accommodation.  Motion to Dismiss at 15.  These are not questions that should be decided now, and in fact dictate the need for a trial.  The credibility issues that Defendant raises are for the ultimate factfinder to weigh and decide, and to dispense of this matter now would be premature.  *See Anderson v. Liberty Lobby*, 477 U.S. 242 (1986).

### IV.    As Plaintiff's Income Was Actually Overestimated, There Is Not Basis To Revoke Her *In Forma Pauperis* Status

Defendant's Motion to Dismiss argues that Plaintiff's allegations of poverty are untrue and that Plaintiff "[C]onveniently failed to disclose to the Court approximately twenty-five percent of her 2011 income."  Motion to Dismiss at 13-14.  As stated above, Defendant, and admittedly Plaintiff, were considering the incorrect wage information when calculating how much Plaintiff earned from June 23, 2010 to June 23, 2011.  Further, Defendant is basing the alleged twenty-five percent withholding off of incorrect figures regarding the amounts that Plaintiff withdrew from her TIAA CREF and TSP accounts.  Ultimately, when the Court initially approved Plaintiff's IFP application, it was considering that she had more income that she actually did.  Given that she actually overestimated her wages from Defendant, Plaintiff had less income than she reported.  Accordingly, there is absolutely no basis to now revoke her *in forma pauperis* status.

**V.      Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's

Motion to Dismiss the Amended Complaint and to Revoke Plaintiff's *In Forma Pauperis* Status.


Respectfully submitted,


Date: July 11, 2014                  /s/Ari M. Wilkenfeld_____
                                     Ari M. Wilkenfeld (DC Bar Number 461063)
                                     The Wilkenfeld Law Group
                                     1050 Connecticut Ave., NW
                                     Suite 1000
                                     Washington, DC 20036
                                     Email: ari@wilkenfeldlaw.com
                                     Phone: 202.772.3312
                                     Fax: 202.600.2792


                                     /s/Rosalind H. Herendeen_____
                                     Rosalind H. Herendeen (*pro hac vice*)
                                     The Wilkenfeld Law Group
                                     1050 Connecticut Ave., NW
                                     Suite 1000
                                     Washington, DC 20036
                                     Email: rosalind@wilkenfeldlaw.com
                                     Phone: 202.772.3312
                                     Fax: 202.600.2792